## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

ROBERT CAVISTON,

        Plaintiff,

        v.

JOHNSON CONTROLS, INC. d/b/a
JOHNSON CONTROLS (or "JCI"),

        Defendant.

CIVIL ACTION NO. 1:19-cv-01409

(JONES, C.J.)
(SAPORITO, M.J.)

*FILED*
*WILKES BARRE*

JUN 23 2020

PER_____MS
DEPUTY CLERK

## MEMORANDUM

This age discrimination case is before us on a discovery dispute (Doc. 19) which has been referred to us for resolution. (Doc. 20; Doc. 21).

### I.   STATEMENT OF FACTS

In his amended complaint, the plaintiff, Robert Caviston, alleges age discrimination under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 *et seq.*, and a similar state law claim under the Pennsylvania Human Relations Act (PHRA), 43 P.S. § 951 *et seq*. Prior to filing his complaint, the plaintiff exhausted his administrative remedies before the Equal Employment Opportunity Commission and the Pennsylvania Human Relations Commission.

In his amended complaint, the plaintiff has alleged that he is a 57-

year-old male who worked for the defendant and its predecessor for approximately 23 years until his allegedly unlawful termination on April 26, 2019. The defendant, Johnson Controls, markets automotive systems and building controls, including seating and interior systems, HVAC equipment, building automation, security, fire detection, batteries, and other related services. At the time of his termination, the plaintiff was working as a fire and security account executive.

The plaintiff has alleged that, during the last few years of his employment with the defendant, the defendant's management began a campaign to terminate older employees, clearly favoring younger employees and exhibiting discriminatory animus toward the plaintiff and other older employees. As examples of this conduct, the plaintiff has alleged that, beginning in late 2016, the defendant's management began to terminate several older employees and replace them with substantially younger new hires under the alleged pretext of reductions in force or layoffs. In addition, the defendant's management treated the plaintiff and other older co-workers in a derogatory, demeaning, and condescending manner; it selectively enforced policies against the plaintiff and other older employees; and it gave unreasonably high and

unachievable quotas to the plaintiff and other older employees. This treatment was unlike the treatment of younger co-workers of the defendant. In addition, one of the members of the management team, market director Joseph Emrick, referred to the plaintiff as a "dinosaur" and informed the plaintiff that "he was slowing down."

Emrick, along with sales manager Ken Bouge, stripped the plaintiff and other older employees of key accounts and/or responsibilities and gave them to younger current employees and new hires. Emrick allegedly informed the plaintiff that the "new company culture was not a fit for him" and the defendant's management routinely stated at regional meetings that the defendant wanted to "refresh the sales force." Finally, Bouge showed a clear preference for younger employees and regularly screamed, criticized, and attempted to physically intimidate the plaintiff during at least one meeting.

As a result of the discriminatory and disparate treatment, the plaintiff expressed several concerns of discriminatory treatment on account of his age to Emrich and security sales manager Randy Gleit, who also supervised the plaintiff. Those expressed concerns included informing them that the accounts/business attributable to the plaintiff

were given to substantially younger employees to manage. Despite those complaints of discrimination, the defendant allegedly failed to investigate or resolve those issues and the plaintiff was subjected to progressive hostility and animosity by defendant's management because of his age or his complaints of age discrimination, which included the following: treating the plaintiff in a rude and demeaning manner; Emrick and Bouge scrutinizing and criticizing the plaintiff's work; Bouge and service manager Rick Hartinger refusing to provide the plaintiff with the demonstration products and support that he needed for a multi-million-dollar account; and assigning a new, substantially younger employee to assist the plaintiff with his account while advising the plaintiff that he was not permitted to help or train the younger employee, yet still criticizing the plaintiff and holding him accountable when customers complained that the younger employee made mistakes.

On April 26, 2019, in close proximity to his complaints of age discrimination, the plaintiff was abruptly informed by Gleit, Emrich, and a human resource representative that he had been selected by the defendant for layoff (i.e., termination without any comparable alternative position offered). The plaintiff further alleged that he was selected for

layoff because of his age, despite the fact that: the defendant continually hired younger and additional sales people; the plaintiff was more skilled and had better relationships than similarly situated employees retained; the plaintiff was experienced and had proven capable of selling in two separate lines of product for the defendant (fire or security) while other younger sales people retained by the defendant were only capable or experienced in selling in one line of business; and the plaintiff was terminated in a time-frame when he was engaging in substantial sales and would have accomplished his current sales target.

Following the plaintiff's termination, he was offered an unsolicited severance pay package if he agreed to waive legal claims against the defendant, including those for age discrimination. The plaintiff did not sign the proposed severance agreement. Finally, the plaintiff has alleged that he believes that he was terminated from his position with the defendant because of his advanced age and his complaints of age discrimination.

Following the plaintiff's separation from employment, the plaintiff filed a charge of discrimination with the EEOC asserting age discrimination and retaliation. After he filed his claims in this court, the

defendant refused to rehire him for certain positions despite being qualified. In addition to failing to give the plaintiff's applications meaningful review, the defendant has provided negative information to prospective employers in an effort to interfere with the plaintiff's current job search.

On the basis of these allegations, the plaintiff filed his complaint and subsequent amended complaint for age discrimination, hostile work environment, and retaliation under the ADEA, and for post-employment retaliation and failure to hire, also under the ADEA.

On April 3, 2020, the defendant filed its answer to the amended complaint with affirmative defenses. (Doc. 31). In its answer, the defendant denied the allegations that it discriminated or retaliated against the plaintiff in any respect. In addition, the defendant asserts that the plaintiff's age played no role in the termination decision.

Thereafter, a discovery dispute arose regarding answers to plaintiff's interrogatories and responses to plaintiff's requests for production of documents. This discovery dispute was referred to the undersigned United States magistrate judge for resolution. We conducted a telephonic conference on March 10, 2020, wherein counsel agreed to

meet to attempt to resolve the issues and report back to the court. After being notified by counsel that the parties have worked through many of the disputes with some success, a telephone conference was requested to discuss the court's preferences. We conducted an on-the-record conference on April 24, 2020, with counsel where we heard argument regarding the parties' respective positions. We directed counsel to submit letter-briefs on the outstanding disputes. We have docketed those submissions. (Doc. 40; Doc. 41; Doc. 42; Doc. 43). Counsel's submissions have informed the court that the dispute is limited to Interrogatory No. 6, Interrogatory No. 7, Document Request No. 12, Document Request No. 14, and Document Request No. 19. We have construed the plaintiff's initial letter-brief (Doc. 40) as a motion to compel and the defendant's responses as objections to the requested discovery.

## II.   LEGAL STANDARD

The federal courts have broad discretion to manage discovery, *Sempier v. Johnson & Higgins*, 45 F.3d 724, 734 (3d Cir. 1995), and the federal rules have long permitted broad and liberal discovery. Macy's, 193 F.3d 766, 777 (3d Cir.1999). Pursuant to Rule 26(b)(1), parties may obtain discovery regarding "any nonprivileged matter that is relevant to

any party's claim or defense and proportional to the needs of the case. . . .

Information within this scope of discovery need not be admissible in

evidence to be discoverable." Fed. R. Civ. P. 26(b)(1). Further, the federal

rules' relevancy requirement is to be construed broadly, and material is

relevant if it bears on, or reasonably could bear on, an issue that is or

maybe involved in the litigation. *Oppenheimer Fund, Inc. v. Sanders*, 437

U.S. 340, 350 (1978).

> Rule 26 establishes a liberal discovery policy. Discovery
> is generally permitted of any items that are relevant or
> may lead to the discovery of relevant information.
> Moreover, discovery need not be confined to items of
> admissible evidence but may encompass that which
> appears reasonably calculated to lead to the discovery of
> admissible evidence.

*Clemens v. N.Y. Cent. Mut. Fire Ins. Co.*, 300 F.R.D. 225, 226 (M.D. Pa.

2014) (citations omitted). When the Court is presented with a motion to

compel discovery,

> [t]he burden is on the objecting party to demonstrate in
> specific terms why a discovery request is improper. The
> party objecting to discovery must show that the
> requested materials do not fall within the broad scope of
> relevance or else are of such marginal relevance that the
> potential harm occasioned by discovery would outweigh
> the ordinary presumption in favor of broad disclosure.

*Id.* at 227 (citations, internal quotation marks, and alterations omitted).

### III.   DISCUSSION

In order to establish a prima facie case of age discrimination, a plaintiff must show that he: (1) was over forty years old; (2) was qualified for the position in question; (3) suffered an adverse employment decision; and (4) was replaced by a sufficiently younger person to permit an inference of age discrimination. *Brewer v. Quaker State Oil Ref. Corp.*, 72 F.3d 326, 330 (3d Cir. 1995). Where an employee is terminated during a reduction in force ("RIF"), the plaintiff must show "that the employer retained a sufficiently younger similarly situated employee." *Monaco v. Am. Gen. Assurance Co.*, 359 F.3d 296, 301 (3d Cir. 2004); *Anderson v. Consol. Rail Corp.*, 297 F.3d 242, 250 (3d Cir. 2002). Otherwise, the ADEA would operate to guarantee "a protected employee a job at the expense of a sufficiently younger employee." *Anderson*, 297 F.3d at 250.

In employment discrimination cases, it is undisputed that discovery directed to similarly situated employees is relevant. *Salamone v. Carter's Retail, Inc.*, No. 09–5856 (GEB), 2011 WL 1458063, at *3 (D.N.J. Apr. 14, 2011); *see also Davis v. Cleary*, No. 09–0925 (AET), 2011 WL 4435697, at *5 (D.N.J. Sept. 22, 2011). Indeed, discovery in these cases is broad because plaintiffs often rely on indirect or circumstantial proof of

discrimination. *Salamone*, 2011 WL 1458063, at *3. There is no general rule to determine who is or who is not a similarly situated employee. Instead, "case specific definitions" are used. *Id.* at *3. The determination of whether employees are similarly situated takes into account factors such as the employees' job responsibilities, the supervisors and decision-makers, and the nature of the misconduct engaged in. *Wilcher v. Postmaster Gen.*, 441 Fed. App'x 879, 882 (3rd Cir. 2011). Pursuant to Fed. R. Civ. P. 26(b), plaintiff is entitled to any nonprivileged matter relevant to his claim. "Courts have construed this rule liberally, creating a broad vista for discovery." *E.E.O.C. v. Princeton Healthcare Sys.*, No. 10–4126 (JAP), 2011 WL 2148660, at *11 (D.N.J. May 31, 2011) (citation omitted).

The plaintiff maintains that the requests at issue can be separated into two distinct categories for purposes of resolution: Interrogatory No. 7 and Document Request No. 12 are "comparator requests"; and Interrogatory No. 6 and Document Request No. 19 seek information respecting the age composition of the defendant's employees (including new hires and the age composition of the workplace during the period at issue), with Document Request No. 14 serving as a "mirror" request for

documents underlying Interrogatory No. 6. Plaintiff's counsel has amended the original discovery requests to seek information and documents only within the "Chesapeake region" of Johnson Controls. We will address them *seriatim*.

### A. Interrogatory No. 6 – New Hire Information

As originally stated, Interrogatory No. 6 sought basic information on the full roster of Johnson Controls employees. During the meet-and-confer process, the plaintiff has narrowed this interrogatory to seek this information only for those employees newly hired within the three-year period preceding his termination.

Interrogatory No. 6 states:

> Please provide a full list of employees on Defendants' payroll within the last three (3) years including:
>
> - employee name;
>
> - dates of employment;
>
> - age;
>
> - positions held; and
>
> - compensation paid to this employee.

The defendant objected to this interrogatory as overbroad, unduly burdensome, and not proportional to the needs of the case, and on the

grounds that it sought confidential, private information about non-party employees.

Through the meet-and-confer process, the plaintiff has narrowed the scope of this interrogatory to newly hired employees and to the company's Chesapeake region, which encompasses parts of Pennsylvania, Delaware, Maryland, and Virginia. He has also clarified that the three-year period for which he seeks this information is May 1, 2017, through May 1, 2020.

The defendant suggests that the scope of this interrogatory should be further narrowed to employees newly hired *after* the plaintiff's termination because employees hired before that date could not have replaced him. But, as the plaintiff has noted in his motion papers, in a reduction-in-force case, a plaintiff need not show that he was replaced by a younger worker, but merely that "the employer retained 'unprotected workers.'" *Showalter v. Univ. of Pittsburgh Med. Ctr.*, 190 F.3d 231, 234 (3d Cir. 1999).

We find this interrogatory, as narrowed by the plaintiff to those employees newly hired within the Chesapeake region between May 1, 2017, and May 1, 2020, to be reasonably calculated to lead to admissible

evidence and proportional to the needs of this case, provided it is further narrowed to encompass only those newly hired employees within the sales realm.

Accordingly, the defendant's objection to Interrogatory No. 6 is **SUSTAINED in part and OVERRULED in part**. The defendant shall serve an answer to the interrogatory, limited to employees newly hired to sales positions within the Chesapeake region of Johnson Controls between May 1, 2017, and May 1, 2020.

### B. Interrogatory No. 7 – Comparator Information

As originally stated, Interrogatory No. 7 sought disciplinary information for the plaintiff's peers over a five-year period. During the meet-and-confer process, the plaintiff has narrowed this interrogatory to seek this information for the sixteen-month period immediately preceding his termination.

Interrogatory No. 7 states:

> Plaintiff(s) is entitled to comparator information to determine if there was disparate treatment with respect to discipline and/or termination of Plaintiff(s), and to that end, please identify:
>
> A. The name of every individual, within the last 5 years at Plaintiff(s) work location, who was given verbal or written admonishment, warning, reprimand(s) or

discipline for any of the same reasons Defendant(s) contend resulted in or contributed to Plaintiff(s) termination from employment with Defendant(s);

B. The name of every individual, within the last 5 years who worked under any of the same management as Plaintiff(s), who was given verbal or written admonishment, warning, reprimand(s) or discipline for any of the same reasons Defendant(s) contend resulted in or contributed to Plaintiff(s) termination from employment with Defendant(s);

C. As to information provided in response to subparts (A) and (B) herein and for each individual identified, please specifically identify: (1) the date of each verbal **or** written admonishment, discipline, reprimand or warning; (2) the reason(s) for such admonishment, discipline, reprimand or warning being given to the employee (or former employee); (3) the manager who gave the verbal or written warning, admonishment, reprimand or discipline to the employee (or former employee); and (4) the outcome of the warning, discipline, reprimand or admonishment (i.e. whether it was a first step discipline, whether it resulted in termination, suspension or other penalties).

The defendant objected to this interrogatory as vague, ambiguous, overbroad, unduly burdensome, and not proportional to the needs of the case, and on the grounds that it sought confidential, private information about non-party employees.

Through the meet-and-confer process, the plaintiff has narrowed the scope of this interrogatory to employees working in a sales capacity, rather than *all* employees. He has also clarified that the disciplinary

information he seeks includes sales performance reviews, written warnings, or performance improvement plans (PIPS), and that the "work location" referenced is the company's Chesapeake region, which encompasses parts of Pennsylvania, Delaware, Maryland, and Virginia.[1] He has also clarified that the period for which he seeks this information is January 2018 through April 2019.

The defendant argues that disciplinary information regarding other employees is not relevant because the plaintiff was not terminated for misconduct. But material produced in discovery indicates that disciplinary information was among several factors considered by decision-makers in determining which employees within the Chesapeake region were to be released as part of the RIF process. The disciplinary history of other employees considered for release—especially those who were retained—is clearly relevant under the circumstances presented.

We find this interrogatory, as narrowed by the plaintiff to those employees working in a sales capacity within the Chesapeake region between January 2018 and April 2019—and subject to the clarification

---

[1] The defendant prefers to construe "work location" as its New Cumberland branch office only.

that the responsive "discipline" information requested in the interrogatory includes sales performance reviews, written warnings, or performance improvement plans (PIPS)—to be reasonably calculated to lead to admissible evidence and proportional to the needs of this case.

Accordingly, the defendant's objection to Interrogatory No. 6 is **SUSTAINED in part and OVERRULED in part**. The defendant shall serve an answer to the interrogatory, limited to employees working in sales positions within the Chesapeake region of Johnson Controls between January 2018 and April 2019.

### C. Document Request No. 12 – Sales Performance Data

As originally stated, Document Request No. 12 sought sales performance information for the plaintiff's peers over a five-year period. During the meet-and-confer process, the plaintiff has narrowed this document request to seek this information for the sixteen-month period immediately preceding his termination.

Document Request No. 12 states:

> Please produce the following documents respecting Defendant's sales force:
>
> a) any employee lists, internal documents, memos or organizational charts reflecting the names of the sales employees within Plaintiff's Bran[ch] Office

for the last five (5) years of his employment
(including any updated charts since Plaintiff's
separation);

b) all spreadsheets, charts, PowerPoints or other
internal documents used to monitor sales
performance, whether that be department-wide
sales, sales based strictly on the fire, security,
HVAC side (or all three), or monitoring of based
each individual employee's sales-performance.

The defendant objected to this document request as vague,
ambiguous, overbroad, unduly burdensome, and not proportional to the
needs of the case, and on the grounds that it sought confidential, private
information about non-party employees.

Through the meet-and-confer process, the plaintiff has narrowed
the period for which he seeks this information to January 2018 through
April 2019. He has also clarified that he seeks information concerning
sales performance throughout the Chesapeake region, rather than just
the New Cumberland branch office only.

We find this document request, as narrowed by the plaintiff to those
sales employees within the Chesapeake region between January 2018
and April 2019, to be reasonably calculated to lead to admissible evidence
and proportional to the needs of this case, provided it is further narrowed
to encompass only those documents or electronically stored information

that were reasonably available to relevant decision-makers at the time of the April 2019 reduction-in-force decision-making process.

Accordingly, the defendant's objection to Document Request No. 12 is **SUSTAINED in part and OVERRULED in part**. The defendant shall produce documents responsive to this request, limited to materials concerning sales employees within the Chesapeake region of Johnson Controls between January 2018 and April 2019, and further limited to materials reasonably available to relevant decision-makers at the time of the April 2019 reduction-in-force decision-making process.

### D. Document Request No. 14 – New Hire Documentation

This document request is apparently intended to "mirror" Interrogatory No. 6 (as narrowed to new hires), and thus the parties both regard the discovery dispute concerning this document request to be coextensive with the related interrogatory.

Document Request No. 14 states:

> Please produce the following personnel documents for <u>any</u> individuals hired for any sales based positions within two (2) years prior to Plaintiff(s) termination from employment and for 1 year following Plaintiff(s) termination from employment:
>
> a) Copies of each individual's resume(s);
>
> b) Copies of each individuals job application(s);

c) Copies of all information reflecting the hiring date(s), compensation offer(s), position for which the employee was hired, the group and/or management the employee was to work within, and the physical location wherein the individual was considered based; and

d) documentation reflecting the individual's age.

The defendant objected to this document request as vague, ambiguous, overbroad, unduly burdensome, and not proportional to the needs of the case, and on the grounds that it sought confidential, private information about non-party employees.

As with the companion interrogatory above, the plaintiff has narrowed the scope of this document request to newly hired employees and to the company's Chesapeake region, and he has clarified that the three-year period for which he seeks this information is May 1, 2017, through May 1, 2020.

For the reasons stated above with respect to Interrogatory No. 6, we find this interrogatory, as narrowed by the plaintiff, to be reasonably calculated to lead to admissible evidence and proportional to the needs of this case, provided it is further narrowed to encompass only those documents concerning newly hired employees within the sales realm.

Accordingly, the defendant's objection to Document Request No. 14

is **SUSTAINED in part and OVERRULED in part**. The defendant shall produce documents responsive to this request, limited to materials concerning employees newly hired to sales positions within the Chesapeake region of Johnson Controls between May 1, 2017, and May 1, 2020.

### E. Document Request No. 19 – Age Composition Data

As originally stated, Document Request No. 19 sought age composition information for the plaintiff's peers over a three-year period. During the meet-and-confer process, the plaintiff has narrowed this document request to seek this information for the Chesapeake region only.

Document Request No. 19 states:

> Please provide the following documents (stored in hardcopy or electronically) for each and every person who worked under any of the same managers who supervised Plaintiff(s) and who worked within the same or similar positions as Plaintiff(s) for the last three (3) years:
>
> a) Any and all company documents showing the age of each individual;
>
> b) Any and all documents provided by each individual as a self[-]disclosure or sections of employment application materials identifying age by each such individual; and

      c) Every document prepared for or filed with any state or federal agency identifying departmental or companywide age data, including but not limited to EEO-1 forms for the last full three (3) years.

The defendant objected to this document request as vague, ambiguous, overbroad, unduly burdensome, and not proportional to the needs of the case, and on the grounds that it sought confidential, private information about non-party employees.

In response to this request, the defendant produced electronically stored information, characterized as a "RIF Tracker" and bates-labeled ESI 1862, listing nearly 200 employees who were considered for the RIF, identifying which were selected for termination and which were retained.[2] For most employees considered, this electronic document included their ages.[3] In producing this information, the defendant contends that it has substantially complied with Document Request No.

---

[2] The plaintiff has attached a copy of ESI 1862 to its reply letter-brief, but we have omitted the attachment from the copy docketed in CM/ECF (Doc. 42) because it contains the personal information of non-party individuals.

[3] The defendant has noted in the margin of its letter-brief that it will supplement with additional documents if the plaintiff identifies any similarly situated employees within the sales team of the HVAC Domain whose age is not included.

19.

The plaintiff argues that the creation of the RIF Tracker in connection with layoffs suggests that the defendant could readily create and produce some other, similar but apparently more comprehensive report in response to the plaintiff's document request. But "a party need only produce existing documents, and not create documents, in response to a Rule 34 document request." *Harris v. Advance America Cash Advance Ctrs., Inc.*, 288 F.R.D. 170, 173 (S.D. Ohio 2012).

Based on the record before us, we find the defendant's production of the "RIF Tracker" (ESI 1862) to be responsive to Document Request No. 19 and sufficient to discharge its obligation to respond to this discovery request, subject to its obligation to supplement in accordance with Rule 26(e) of the Federal Rules of Civil Procedure.

Accordingly, the defendant's objection to Document Request No. 19 is **SUSTAINED**.

## IV.   CONCLUSION

For the foregoing reasons, the defendant's objections to the disputed discovery requests shall be sustained in part and overruled in part, and the plaintiff's motion to compel (Doc. 40) shall be **GRANTED in part**

**and DENIED in part**.

 An appropriate order follows.

Dated: June __**23**__, 2020

       ~~Joseph F. Saporito, Jr.~~

       JOSEPH F. SAPORITO, JR.
        United States Magistrate Judge